CAUSE NO.: CL-14-4595-E

| | | |
|---|---|---|
| JON PIERRE GENDRON | § | IN THE COUNTY COURT |
| Plaintiff | § | |
| | § | |
| V. | § | AT LAW NUMBER FIVE |
| | § | |
| SAFECO INSURANCE OF AMERICA | § | |
| And GENERAL INSURANCE COMPANY | § | |
| OF AMERICA | § | |
| Defendant | § | HIDALGO COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **JON PIERRE GENDRON** ("Plaintiff"), complaining of and about

**SAFECO INSURANCE COMPANY OF AMERICA** hereinafter referred to as ("Safeco")

and **GENERAL INSURANCE COMPANY OF AMERICA** ("General Insurance")

(collectively referred to as "Defendants"), and for cause of action respectfully shows

unto the Court the following:

### CLAIM FOR RELIEF

1.     The damages sought are within the jurisdictional limits of the Court.

Plaintiff seeks monetary relief in excess of $100,000.00, including damages, penalties,

cost, expenses, pre-judgment interest and attorney's fees.

### DISCOVERY CONTROL PLAN LEVEL

2.     Plaintiff intends to conduct discovery under Level 2 of the Texas Rules of

Civil Procedure.

### PARTIES AND SERVICE

3.     Plaintiff, JON PIERRE GENDRON, is an Individual whose address is 1806

Forrest Lane, Weslaco, Hidalgo County, Texas 78596.

4.       The last three digits of the driver's license number of JON PIERRE

GENDRON are 074.

5.       Defendant, SAFECO INSURANCE COMPANY OF AMERICA has already

been served with citation.

6.       Defendant, GENERAL INSUANCE COMPANY OF AMERICA, insurance

carrier, organized and existing under the laws of the State of Massachusetts and

authorized to conduct business in Texas, may be served with process by serving its

registered agent for service by private process server at the following address:

**Corporation Service Company. 211 East 7th Street, Suite 620, Austin, Texas 78701-

3218.** However, Frank Sabo of Guerra, Leeds, Sabo, & Hernandez, P.L.L.C., attorney

for General Insurance Company of America has agreed to accept service at his office

located at **10213 N 10th St., McAllen, TX 78504**. An acceptance of service will be

executed and filed with the Court in accordance with Texas Rule of Civil Procedure 119.

## JURISDICTION AND VENUE

7.       The subject matter in controversy is within the jurisdictional limits of this

Court.

8.       This Court has jurisdiction over the parties. The Court has personal

jurisdiction over Defendants, Safeco and General Insurance, nonresidents, because

Defendants engaged in business in Texas by contracting with a Texas resident. The

contract was performable in whole or in part in Texas by both parties.

9.       Under Section 15.002(a)(1) of the Texas Civil Practice and Remedies

Code, venue in Hidalgo County is proper in this cause because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## FACTS

10.    On February 19, 2010, Mr. Gendron was traveling westbound on Trenton in his 2004 Brown F-150, with a 2007 utility trailer attached, on the 2500 Block of W. Trenton, in McAllen, Texas, in a reasonably prudent manner.  Belinda C. Rodriquez, (hereinafter "Rodriguez") was driving westbound, behind Plaintiff, when she abruptly and recklessly failed to control her speed which caused the collision with Plaintiff. Plaintiff suffered property damage and personal injury as a result.

11. Plaintiff filed suit against Rodriguez and recovered the policy limits for personal injury from Rodriguez's insurance policy. However, Mr. Gendron's damages are in excess of Rodriguez's insurance policy limits.

12.    Mr. Gendron has an insurance policy with Defendant Safeco and General Insurance, which contains coverage for uninsured/underinsured motorists.

## PLAINTIFF'S BREACH OF CONTRACT AGAINST SAFECO

## AND GENERAL INSURANCE

13.    Safeco, General Insurance, and Plaintiff entered into an insurance contract intended to provide Plaintiff with coverage for property damage and bodily injury for uninsured/underinsured motorists. Attached hereto and incorporated by reference as **Exhibit "A"** is a true and correct copy of the policy.

14.    Plaintiff has complied with all of the policy conditions.  Plaintiff incurred property damage and medical expenses in excess of the policy limits of Rodriguez's insurance, thus triggering the uninsured/underinsured motorist provision of the policy

between Mr. Gendron, Safeco and General Insurance.  Safeco and General Insurance have breached its contract with Plaintiff by failing to pay the covered losses.

15. Plaintiff will show that Rodriguez was an underinsured motorist at the time of the collision made the basis of this suit. Plaintiff would further show that he suffered injuries as a result of the collision and that such injuries were caused by Rodriguez's negligence. In addition, Plaintiff will show that that damages he sustained are in excess of Rodriguez's policy limits.

16.    All conditions precedent have been performed or have occurred.

## REQUEST FOR DECLARATORY RELIEF

17.    Alternatively, and without waiving the foregoing, Plaintiff requests declaratory relief from this Court. The purpose of the Declaratory Judgment Act of Chapter 37 of the Texas Civil Practice and Remedies Code "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & rem. Code §37.002(b).

18.    Plaintiff is entitled to declaratory relief because there is a justiciable controversy that exists regarding the rights of Plaintiff under the uninsured/underinsured motorist provision of the policy.

19. Accordingly, pursuant to Tex. Civ. Prac. & Re. Code Ann. §37.001, Plaintiffs request that this court enter a declaratory judgment as to liability and damages.

20. *Attorney Fees.* Plaintiffs are entitled to recover reasonable and necessary attorney fees that are equitable and just under Texas Civil Practice & Remedies Code section 37.009 because this is a suit for declaratory relief.

## DAMAGES FOR PLAINTIFF, JON PIERRE GENDRON

21.    As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff was caused to suffer personal injuries to his person as well as property damages to his vehicle, and to incur the following damages:

A.    Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff for the necessary care and treatment of the injuries resulting from the incident complained of herein and such charges are reasonable and were usual and customary charges for such services in Hidalgo County Texas;

B.    Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

C.    Physical pain and suffering in the past;

D.    Physical pain and suffering in the future;

E.    Physical impairment in the past;

F.    Physical impairment which, in all reasonable probability; will be suffered in the future;

G.    Loss of earnings in the past;

H.    Loss of Household Services in the past;

I.    Property damages;

J.    Mental anguish in the past;

K.    Mental anguish in the future; and

L.    The damages Plaintiff may be entitled to under the law.

Electronically Submitted
2/10/2015 11:10:43 AM
Hidalgo County Clerks Office

## JURY DEMAND

22.    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants Safeco and General Insurance for damages in an amount within the jurisdictional limits of the Court; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: _____

IVAN F. PEREZ
State Bar No.: 24027608
JUAN M. PEQUEÑO, JR.
State Bar No. 24079124

JONES, GALLIGAN, KEY & LOZANO, L.L.P.
Town Center Tower, Suite 300
2300 West Pike Boulevard
Post Office Drawer 1247 (78599-1247)
Weslaco, Texas 78596
Telephone: (956) 968-5402
Telecopier: (956) 969-9402
E-Mail: ifperez@jgkl.com

**ATTORNEYS FOR PLAINTIFF JON PIERRE GENDRON**

Electronically Submitted
2/10/2015 11:10:43 AM
Hidalgo County Clerks Office

## CERTIFICTE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent to the following on this the _____ 10th _____ day of February, 2015:

SAFECO INSURANCE                              Via Certified Mail: 7013 3020 0000 8656 0700
COMPANY OF AMERICA                                        Return Receipt Requested
175 Berkeley St.,
Boston, Massachusets 02116-5066


_____
JUAN M. PEQUEÑO, JR.



**Safeco** Insurance

# TEXAS PERSONAL AUTO POLICY

SAFECO INSURANCE COMPANY OF AMERICA
Home Office: 4333 Brooklyn Ave. N.E., Seattle, Washington 98185
GENERAL INSURANCE COMPANY OF AMERICA
Home Office: 4333 Brooklyn Ave. N.E., Seattle, Washington 98185
SAFECO INSURANCE COMPANY OF ILLINOIS
Home Office: 2800 W. Higgins Rd., Suite 1100, Hoffman Estates, Illinois 60195

(Each a stock insurance company.)

## READY REFERENCE TO YOUR AUTO POLICY

| | Beginning On Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| PART A — LIABILITY COVERAGE | 2 |
|   Insuring Agreement | |
|   Supplementary Payments | |
|   Exclusions | |
|   Limit of Liability | |
|   Out of State Coverage | |
|   Financial Responsibility | |
|   Other Insurance | |
| PART B1 — MEDICAL PAYMENTS COVERAGE | 6 |
|   Insuring Agreement | |
|   Exclusions | |
|   Limit of Liability | |
|   Other Insurance | |
| PART B2 — PERSONAL INJURY PROTECTION COVERAGE | 7 |
|   Insuring Agreement | |
|   Exclusions | |
|   Limit of Liability | |
|   Other Insurance | |
|   Other Provisions | |
| PART C — UNINSURED/UNDERINSURED MOTORISTS COVERAGE | 10 |
|   Insuring Agreement | |
|   Exclusions | |
|   Limit of Liability | |
|   Other Insurance | |
| PART D — COVERAGE FOR DAMAGE TO YOUR AUTO | 13 |
|   Insuring Agreement | |
|   Transportation Expenses | |
|   Exclusions | |
|   Limit of Liability | |
|   Payment of Loss | |
|   No Benefit to Bailee | |
|   Other Sources of Recovery | |
|   Appraisal | |
| LIMITED MEXICO COVERAGE | 17 |
| PART E — DUTIES AFTER AN ACCIDENT OR LOSS | 17 |
| PART F — GENERAL PROVISIONS | 18 |
|   Policy Period and Territory | |
|   Changes | |
|   Termination | |
|   Two or More Autos Insured; Two or More Auto Policies | |

SA-1852/TXEP 12/06

Safeco and the Safeco logo are registered trademarks of Safeco



EXHIBIT

A

**ADDITIONAL COVERAGES**                                                 **22**
   Towing and Labor Costs Coverage
   Loss of Use Coverage
   Supplementary Death Benefit

## AGREEMENT

Subject to the payment of all premiums, when due, and in reliance upon the statements in the application, and subject to the terms of this policy, we make the following agreements with you.

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations;

2. The spouse if a resident of the same household.

   If the spouse ceases to be a resident of the same household during the policy period, the spouse will be considered "you" and "your" under this policy during a period of separation in contemplation of divorce and only until the effective date of another policy listing the spouse as a named insured;

3. The civil partner, if a resident of the same household, by civil union licensed and certified by the state; or

4. The domestic partner, if a resident of the same household;

   "Domestic partner" means a person living as a continuing partner with you and:

   (a) is at least 18 years of age and competent to contract;

   (b) is not a relative; and

   (c) shares with you the responsibility for each other's welfare, evidence of which includes:

       (1) the sharing in domestic responsibilities for the maintenance of the household; or

       (2) having joint financial obligations, resources, or assets; or

       (3) one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

   Domestic partner does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

B. "We," "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least six months.

D. Throughout the policy, "minimum limits" refers to the following limits of liability required by Texas Civil Statues, Article 6701h, entitled "Texas Motor Vehicle Safety Responsibility Act," to be provided under a policy of automobile liability insurance:

1. $20,000 for each person, subject to $40,000 for each accident, with respect to **bodily injury;** or

2. $15,000 for each accident with respect to **property damage.**

Other words and phrases are defined. They are in bold type when used.

E. "Bodily injury" means bodily harm, sickness or disease, including death that results.

F. "Business" includes trade, profession or occupation.

G. "Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

H. "Family member" means a person related to you by blood, marriage, civil union, domestic partnership or adoption who is a resident of your household. This includes a ward or foster child who is a resident of your household.

I. "Fungi" means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of fungi, including growth, proliferation or spread of fungi or the current or past presence of fungi. However, this definition does not include any fungi intended by the insured for consumption.

J. "Occupying" means in; upon; or getting in, on, out or off.

K. "Property damage" means physical injury or destruction of tangible property including loss of use.

L. "Punitive or exemplary damages" include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for **bodily injury or property damage.**

SA-1852/TXEP 12/06      — 1 —

M. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup, van or motorhome.

It also means a recreational camping vehicle, a farm wagon or farm implement while towed by a vehicle listed in M.1. or M.2. above.

N. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. a. Any of the following types of vehicles on the date you become the owner, subject to the conditions under N.2.b. below, whether operational or not:

(1) a private passenger auto;

(2) a pickup or van that:

(a) has a Gross Vehicle Weight Rating of 25,000 lbs. or less; and

(b) is not used for the delivery or transportation of goods and materials unless such use is:

i. incidental to your business of installing, maintaining or repairing furnishings or equipment; or

ii. for farming or ranching; or

(3) a motorhome or trailer.

b. The vehicles listed in N.2.a. above are subject to the following conditions:

(1) Newly Acquired Replacement Vehicle. If the vehicle you acquire replaces one shown in the Declarations, the replacement vehicle will have the same coverage as the vehicle it replaced. This provision applies only if:

(a) you acquire the replacement vehicle during the

policy period shown on the Declarations; and

(b) there is no other insurance policy that provides coverage for that replacement vehicle.

(2) Newly Acquired Additional Vehicle. If a newly acquired vehicle is in addition to any shown in the Declarations, that vehicle will have the broadest coverage we now provide for any vehicle shown in the Declarations. This provision applies only if:

(a) you acquire the additional vehicle during the policy period shown on the Declarations; and

(b) there is no other insurance policy that provides coverage for the additional vehicle.

(3) Provisions N.2.b.(1) and (2) apply only if you ask us to insure a newly acquired vehicle within thirty (30) days after you acquire the replacement or additional vehicle. This thirty (30) days of coverage includes the day you acquire the vehicle.

3. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;

b. repair;

c. servicing;

d. loss; or

e. destruction.

This provision (N.3.) does not apply to Coverage for Damage to Your Auto.

## PART A — LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability

for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

2. Any person using **your covered auto** with **your** express or implied permission. The actual use must be within the scope of that permission.

3. For **your covered auto,** any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under **B.1.** and **B.2.** above.

4. For any auto or **trailer,** other than **your covered auto,** any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision **(B.4.)** applies only if the person or organization does not own or hire the auto or **trailer.**

**INTEREST ON JUDGMENTS**

We will pay interest on judgments subject to all of the following:

1. Any notice, demand, summons, judgment, or any process has been promptly forwarded to us as required by the policy conditions.

2. We accept the defense or agree to the judgment.

3. We will pay the interest on that part of the judgment that is covered and that does not exceed our applicable limit of liability.

4. We will pay interest that accrues after entry of judgment and before we pay, tender, or deposit in court.

5. If we appeal the judgment, we will pay interest on the entire judgment.

6. Post-judgment interest is in addition to the applicable limit of liability.

7. Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

**SUPPLEMENTARY PAYMENTS**

We will pay on behalf of an **insured:**

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy. We are not obligated to apply for or furnish such bonds.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Up to $100 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

4. Other reasonable expenses incurred at our request.

**EXCLUSIONS**

A. We do not provide Liability Coverage for:

1. Any **insured** who intentionally causes **bodily injury** or **property damage.**

2. **Property damage** to property owned or being transported by any **insured.**

3. **Property damage** to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   any **insured.**
   This exclusion **(A.3.)** does not apply to **property damage** to a residence or private garage.

4. **Bodily injury** to an employee of any **insured** during the course of employment. This exclusion **(A.4.)** does not apply to **bodily injury** to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. Any **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion **(A.5.)** does not apply to a share-the-expense car pool.

6. Any **insured** using any vehicle while employed in the delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's** business.

7. a. Any **insured** while employed or otherwise engaged in the business of:
   (1) selling;
   (2) repairing;
   (3) servicing;
   (4) storing; or
   (5) parking;
   vehicles designed for use mainly on public highways. This includes road testing and delivery.
   b. This exclusion **(A.7.)** does not apply to the ownership, maintenance or use of **your covered auto** by:
   (1) you;
   (2) any **family member;** or
   (3) any partner, agent or employee of you or any **family member.**

SA-1852/TXEP 12/06 — 3 —

8. Any **insured** maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any business (other than farming or ranching) not described in Exclusions A.6. or A.7. This exclusion (A.8.) does not apply to the maintenance or use of a:

a. private passenger auto;

b. pickup, motorhome or van that:

(1) you own; or

(2) you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

(a) breakdown;

(b) repair;

(c) servicing;

(d) loss; or

(e) destruction; or

c. trailer used with a vehicle described in A.8.a. or A.8.b. above.

9. Any **insured** using a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However, this exclusion does not apply to a **family member** using **your covered auto**.

10. a. Bodily injury or property damage for which any **insured**:

(1) is an insured under a nuclear energy liability policy; or

(2) would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

b. A nuclear energy liability policy is a policy issued by any of the following or their successors:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters; or

(3) Nuclear Insurance Association of Canada.

11. Punitive or exemplary damages awarded against any **insured**.

12. **Bodily injury** to you or any **family member** except to the extent of the minimum limits of Liability Coverage required by the Texas Motor Vehicle Safety Responsibility Act.

13. **Bodily injury** or property damage arising out of the use of **your covered auto** while leased or rented to others. However, this exclusion does not apply to the operation of **your covered auto** by you or a **family member**.

14. For property damage due to or as a consequence of a seizure of any vehicle by federal or state law enforcement officers as evidence in a case against any **insured** under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such a case.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. a. Any vehicle which:

(1) has fewer than four wheels;

(2) is designed mainly for use off public roads; or

(3) is a vehicle not licensed for use on public roads.

b. This exclusion does not apply:

(1) while such vehicle is being used by an **insured** in a medical emergency; or

(2) to any trailer.

2. Any vehicle, other than **your covered auto**, which is:

a. owned by you; or

b. furnished or available for your regular use.

3. a. Any vehicle, other than **your covered auto**, which is:

(1) owned by any **family member** or other person who resides with you; or

(2) furnished or available for the regular use of any **family member** or other person who resides with you.

b. However, this exclusion (B.3.) does not apply to you while you are maintaining or occupying any vehicle which is:

(1) owned by a **family member** or other person who resides with you; or

(2) furnished or available for the regular use of a **family member** or other person who resides with you.

4. Any vehicle while it is:

a. operating on a surface designed or used for racing, except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

b. participating in a high performance driving or racing instruction course or school; or

c. preparing for, practicing for, used in, or competing in any prearranged or organized:

(1) race activity; or

(2) speed, performance, stunt, or demolition contest or exhibition.

## LIMIT OF LIABILITY

A. If the Declarations indicates "per person"/"per accident" coverage applies:

The limit of liability as shown in the Declarations for "each person" for bodily injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of bodily injury sustained by any one person in any one auto accident.

Subject to this limit for "each person" the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all property damage resulting from any one accident.

This is the most we will pay regardless of the number of:

1. insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. If the Declarations indicate Combined Single Limit applies, Paragraph A. above is replaced by the following:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part B1 or Part C of this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum limits and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance.

## PART B1 — MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

**A.** We will pay **usual and customary charges** incurred for reasonable and necessary medical and funeral expenses because of **bodily injury:**

    **1.** Caused by accident; and

    **2.** Sustained by an **insured.**

We will pay only those expenses incurred for services rendered within three (3) years from the date of the accident.

We have a right to review medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

**B.** "**Insured**" as used in this Part means:

    **1.** You or any **family member:**

        **a.** while **occupying;** or

        **b.** as a pedestrian, including bicycling, when struck by;

        a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

    **2.** Any other person while **occupying your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

    **3.** Any other person while **occupying,** as a guest, an automobile not owned by you or a **family member,** while being operated by you or a **family member.**

**C.** "**Usual and customary charges**" as used in this Part mean:

Any amount which we determine represents a customary charge for services in the geographic area in which the service is rendered. To determine whether a charge is customary, we may consider outside sources of information of our choice, including, but not limited to:

    **1.** Licensed, certified or registered health care professionals;

    **2.** Medical examinations;

    **3.** Medical file reviews;

    **4.** Medical bill review services; or

    **5.** Computerized data bases.

The **insured** shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any **insured** for **bodily injury:**

**1.** Sustained while **occupying** any motorized vehicle having fewer than four wheels.

**2.** Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion(2.) does not apply to a share-the-expense car pool.

**3.** Sustained while **occupying** any vehicle while employed in the delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

**4.** Sustained while **occupying** any vehicle located for use as a residence or premises.

**5.** Occurring during the course of employment if workers' compensation benefits are required or available for the **bodily injury.**

**6.** Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

    **a.** owned by you; or

    **b.** furnished or available for your regular use.

**7.** Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is

    **a.** owned by any **family member** or other person who resides with you; or

    **b.** furnished or available for the regular use of any **family member** or other person who resides with you.

However, this exclusion(7.) does not apply to you.

**8.** Sustained while **occupying** a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However this exclusion does not apply to a **family member** using **your covered auto.**

**9.** Sustained while **occupying** a vehicle when it is being used in the **business** of an **insured.** This exclusion(9.) does not apply to **bodily injury** sustained while **occupying** a:

    **a.** private passenger auto;

    **b.** pickup, van or motorhome that you own; or

    **c.** trailer used with a vehicle described in a. or b. above.

10. Caused by or as a consequence of:

    a. discharge of a nuclear weapon (even if accidental);

    b. war (declared or undeclared);

    c. civil war;

    d. insurrection; or

    e. rebellion or revolution.

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

12. Sustained while occupying any vehicle while it is:

    a. operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance stunt or demolition event;

    b. participating in a high performance driving or racing instruction course or school; or

    c. preparing for, practicing for, used in, or competing in any prearranged or organized:

      (1) race activity; or

      (2) speed, performance, stunt, or demolition contest or exhibition.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. insureds;

2. claims made;

3. vehicles or premiums shown in the Declarations; or

4. vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

**ASSIGNMENT OF PAYMENTS**

1. An **insured** may assign, in writing, payments of medical expenses for services provided to the **insured** that are covered under Part B1 of this policy to a physician or other health care provider that furnished such services to the **insured.**

2. If we received an **insured's** written assignment of such payments, we will pay the medical expenses covered under Part B1 directly to the physician or other health care provider that furnished the services to the **insured.**

---

## PART B2 — PERSONAL INJURY PROTECTION COVERAGE

**DEFINITIONS**

A. **"Family member"** as used in this Part means a person related to the named **insured** by blood, marriage, civil union, domestic partnership or adoption who is a resident of the named **insured's** household. This includes a ward or foster child.

If the spouse of the named **insured** ceases to be a resident of the same household during the policy period, the spouse will be considered a family member under this coverage during a period of separation in contemplation of divorce and only until the effective date of another policy listing the spouse as a named **insured.**

B. **"Your covered auto"**, as used in this Part means a **motor vehicle** owned by the named **insured:**

1. To which the bodily injury liability coverage of this policy applies and for which a specific premium is charged; and

2. For which the named **insured** is required by the Texas Motor Vehicle Safety Responsibility Act to maintain financial responsibility.

C. **"Motor vehicle"** means a:

1. Self-propelled vehicle designed for use on a highway;

2. A trailer or semi-trailer designed for use with a self-propelled vehicle; or

3. Vehicle propelled by electric power obtained from overhead wires, but not operated on rails.

However, **motor vehicle** does not include:

    a. traction engines;

    b. road rollers or graders;

    c. tractor cranes;

    d. power shovels;

    e. well drillers; or

    f. implements of husbandry.

D. **"Named insured"** means the person named in the Declarations.

E. **"Insured"** as used in this coverage means:

1. The **named insured** or any **family member:**

    a. While **occupying;** or

    b. When struck by;

    a motor vehicle.

2. Any other person while **occupying your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

F. **"Usual and customary charges"** as used in this Part means:

Any amount which we determine represents a customary charge or services in the geographic area in which the service is rendered. To determine whether a charge is customary, we may consider outside sources of information of our choice, including, but not limited to:

1. Licensed, certified or registered health care professionals;

2. Medical examinations;

3. Medical file reviews;

4. Medical bill review services; or

5. Computerized data bases.

The **insured** shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

**INSURING AGREEMENT**

A. We will pay, in accordance with the Texas Insurance Code, personal injury protection benefits to an **insured** who sustains **bodily injury**. The **bodily injury** must:

1. Result from an accident with a **motor vehicle;** and

2. Arise out of the ownership, maintenance or use of a **motor vehicle** as a vehicle.

We have a right to review medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

B. Subject to the limits shown in the Declarations, personal injury protection benefits consist of the following:

1. **Medical And Funeral Expenses:**

Payment for **usual and customary charges** incurred for all reasonable expenses incurred within 3 years from the date of the accident for necessary:

    a. medical, surgical, X-ray and dental services, including prosthetic devices;

    b. ambulance, hospital, professional nursing and funeral services; and

    c. services for remedial treatment and care rendered in accordance with a recognized religious healing method.

2. **Loss Of Income:**

    a. 80% of an **insured's** loss of income from employment provided that, at the time of the accident, the **insured:**

        (1) was an income producer; and

        (2) was in an occupational status.

    These benefits do not apply to any loss after the **insured** dies.

    b. Loss of income is the difference between:

        (1) income which would have been earned had the **insured** not been injured; and

        (2) the amount of income actually received from employment during the disability.

    c. If the income being earned as of the date of the accident is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average monthly income earned during the period, not to exceed 12 months, before the date of the accident, shall be used.

3. **Replacement Services:**

Reasonable expenses incurred for obtaining services that replace those an **insured** would normally have performed:

    a. without pay;

b. during a period of disability; and

c. for the care and maintenance of the family or household.

These benefits apply only if, at the time of the accident, the **insured**:

a. was not an income producer; and

b. was not in an occupational status.

These benefits do not apply to any loss after the **insured** dies.

If a lapse occurs:

1. In the period of total disability; or

2. In the medical treatment,

of an **insured** who has received medical and funeral expenses benefits under **B.1.** or loss of income benefits under **B.2.** above, and that **insured** subsequently claims additional benefits based upon a recurrence of the **bodily injury** for which the original claim for benefits was made, the **insured** must provide us with reasonable proof of the recurrence of the **bodily injury**. However, in no event shall the maximum limit for the total of all personal injury protection benefits payable to any **insured** exceed the maximum limit for the total of all personal injury protection benefits shown in the Declarations.

## EXCLUSIONS

A. We do not provide Personal Injury Protection Coverage for any **insured** for **bodily injury** sustained:

1. In an accident caused intentionally by that **insured**.

2. By that **insured** while in the commission of a felony.

3. By that **insured** while attempting to elude arrest by a law enforcement official.

B. We do not provide Personal Injury Protection Coverage for **bodily injury** sustained by:

1. The named **insured** or any family member as a result of the use or operation of any **motor vehicle**, other than **your covered auto**, owned by the named **insured**.

2. Any family member as a result of the use or operation of any **motor vehicle** which is owned by that family member and for which the financial responsibility required by the Texas Motor Vehicle Safety Responsibility Act is not in effect.

C. We do not provide Personal Injury Protection Coverage for **bodily injury**:

1. Due to:

a. War (declared or undeclared);

b. Civil war;

c. Insurrection;

d. Rebellion or revolution; or

e. Any act or condition incident to any of the foregoing.

2. Resulting from the:

a. Radioactive;

b. Toxic;

c. Explosive; or

other hazardous properties of nuclear material.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Schedule or Declarations for Personal Injury Protection Coverage is our maximum limit of liability for each **insured** injured in any one accident. This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. **Your covered autos** or premiums shown in the Declarations; or

4. **Your covered autos** involved in the accident.

B. With respect to an accident to which this coverage applies, any amounts paid under Part A of this policy to an **insured** who is a passenger in **your covered auto** shall reduce any amount that person may be entitled to recover under this coverage.

## OTHER INSURANCE

If there is other Personal Injury Protection Insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for **your covered auto**, shall be excess over any other collectible Personal Injury Protection Insurance.

## LOSS PAYMENTS

Benefits are payable:

1. No more frequently than every two weeks; and

2. Within 30 days after satisfactory proof of claim is received.

## ASSIGNMENT OF PAYMENTS

1. An **insured** may assign, in writing, payments of medical expenses for services provided to the **insured** that are covered under this coverage to a physician or other

health care provider that furnished such services to the **insured.**

2. If we receive an **insured's** written assignment of such payments, we will pay the medical expenses covered under this coverage directly to the physician or other health care provider that furnished the services to the **insured.**

---

## PART C — UNINSURED/UNDERINSURED MOTORISTS COVERAGE

---

### INSURING AGREEMENT

A. We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

   1. **Bodily injury** sustained by an **insured** and caused by an accident; or

   2. **Property damage** caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

Any judgment for damages arising out of suit brought without our written consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us.

B. "**Insured**" as used in this Part means:

   1. You or any **family member.**

   2. Any other person occupying **your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

   ·3. Any person entitled to recover damages because of **bodily injury** to which this coverage applies sustained by a person described in B.1. or B.2. above.

C. "**Property damage**" as used in this Part means injury to, or destruction of, or loss of use of:

   1. **Your covered auto,** not including a temporary substitute.

   2. Any property owned by a person listed in 1. or 2. of the definition of an **insured** while contained in **your covered auto.**

   3. Any property owned by you or any **family member** while contained in any auto not owned, but being operated, by you or any **family member.**

D. "**Uninsured motor vehicle**" means a land motor vehicle or **trailer** of any type:

   1. To which no liability bond or policy applies at the time of the accident.

   2. To which a liability bond or policy applies at the time of the accident but its limit of liability either:

      a. Is not enough to pay the full amount the **insured** is legally entitled to recover as damages; or

      b. Has been reduced by payments to others to an amount which is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

   3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

      a. you or any **family member;**

      b. a vehicle which you or any **family member** are occupying; or

      c. **your covered auto.**

   4. To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

      a. denies coverage; or

      b. is or becomes insolvent.

However, "**uninsured motor vehicle**" does not include any vehicle or equipment:

   1. Owned by or furnished or available for the regular use of you or any **family member.**

   2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

   3. Owned by any governmental unit or agency.

   4. Operated on rails or crawler treads.

   5. Designed mainly for use off public roads while not on public roads.

   6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured/Underinsured Motorists Coverage for **bodily injury** sustained:

   1. By an **insured** while occupying, or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any family member while **occupying**, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured/Underinsured Motorists Coverage for **bodily injury** or **property damage** sustained by any **insured**:

1. Resulting from the intentional acts of the **insured.**

2. If that **insured** or the legal representative settles the **bodily injury** or **property damage** claim without our consent.

3. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (B.3.) does not apply to a share-the-expense car pool.

4. While using any vehicle while employed in the delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

5. While using a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However, this exclusion does not apply to you or any family member using your covered auto.

6. While **occupying** or operating an owned motorcycle or moped.

7. While using any vehicle while it is:

   a. operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

   b. participating in a high performance driving or racing instruction course or school; or

   c. preparing for, practicing for, used in, or competing in any prearranged or organized:

      (1) race activity; or

      (2) speed, performance, stunt, or demolition contest or exhibition.

8. For the first $250 of the amount of **property damage** to the property of that **insured** as the result of any one accident.

C. This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

   a. Workers' compensation law; or

   b. Disability benefits law.

2. Any insurer of property.

D. We do not provide Uninsured/Underinsured Motorists Coverage for **punitive or exemplary damages.**

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for "each person" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of Property Damage Liability shown in the Declarations for "each accident" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all **property damage** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Bonds or policies applicable;

4. Vehicles or premiums shown in the Declarations; or

5. Vehicles involved in the accident.

B. If the Declarations indicate Combined Single Limit Coverage applies, paragraph (A.) above is replaced by the following:

The limit of liability shown in the Declarations for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Bonds or policies applicable;

4. Vehicles or premiums shown in the Declarations; or

5. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for **bodily injury** and **property damage** liability. However, this provision will not change our total limit of liability.

C. Subject to Paragraph A. or B. our limit of liability will be the lesser of:

1. The difference between the amount of an **insured's** damages for **bodily injury** or

SA-1852/TXEP 12/06                    — 11 —

.

**property damage** and the amount paid or payable to that **Insured** for such damages by or on behalf of persons or organizations who may be legally responsible; and

2.  The applicable limit of liability for this coverage.

D.  No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1.  Part A, Part B1 or Part D of this policy; or

2.  Personal Injury Protection Coverage.

E.  We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1.  Workers' compensation law; or

2.  Disability benefits or occupational disease laws.

G.  With respect to coverage under Paragraph 2. of the definition of **uninsured motor vehicle**, we will reduce the **Insured's** total damages by any amount available to that **Insured**, under any bodily injury liability bonds or policies applicable to the **uninsured motor vehicle**, that such **Insured** did not recover as a result of a settlement between that **Insured** and the insurer of an **uninsured motor vehicle**. However, any reduction of the **Insured's** total damages will not reduce the limit of liability for this coverage.

This Paragraph (G.) shall not apply if we advance payment to the **Insured** in the amount equal to the tentative settlement with the insurer of the **uninsured motor vehicle**.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1.  Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for **your covered auto**, shall be excess over any collectible insurance.

2.  If the coverage under this policy is provided:

    a.  on a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the

proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b.  on an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A.  If we and an **Insured** do not agree:

1.  Whether that **Insured** is legally entitled to recover damages; or

2.  As to the amount of damages which are recoverable by that **Insured**;

from the owner or operator of an **uninsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B.  Each party will:

1.  Pay the expenses it incurs; and

2.  Bear the expenses of the third arbitrator equally.

C.  Unless both parties agree otherwise, arbitration will take place in the county in which the **Insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1.  Whether the **Insured** is legally entitled to recover damages; and

2.  The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which **your covered auto** is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

However, at any time before the arbitrators' decision, either party may revoke the agreement to arbitrate the matter.

**ADDITIONAL DUTIES**

A person seeking Uninsured Motorists Coverage under Paragraph 2. of the definition of **uninsured motor vehicle** must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the **insured** and the insurer of the uninsured motor vehicle and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured motor vehicle..

---

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

---

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to your **covered auto** or any **non-owned auto**, including its equipment, any child safety seat in use in **your covered auto** or non-owned auto, minus any applicable deductible shown in the Declarations. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

**Deductible**

Unless stated otherwise, the applicable deductible shown in the Declarations shall be applied to each accidental loss covered under this Part of the policy. If loss to more than one **of your covered autos** or a non-owned auto results from the same loss, only the highest applicable deductible will apply.

If there is a loss to a **non-owned auto,** we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

B. **"Collision"** means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object. No deductible will apply if the **collision** is with another auto insured by a Safeco Insurance company.

**"Comprehensive"** means loss, other than **collision**, to **your covered auto** or a **non-owned auto**. Losses caused by the following are not **collision** losses but are comprehensive losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision,** you may elect to have it considered a loss caused by **collision.**

C. 1. **"Non-owned auto"** means:

a. Any private passenger auto, pickup, van or trailer with a Gross Vehicle Weight Rating of 12,000 pounds or less not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member**; or



b. Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

(1) breakdown;

(2) repair;

(3) servicing;

(4) loss; or

(5) destruction.

2. **"Non-owned auto"** does not include any vehicle which has been operated or rented by or in the possession of an **insured** for 30 or more consecutive days.

D. **"Camper body"** means a body equipped as sleeping or living quarters which is designed to be mounted on a pickup.

E. **"Diminution in value"** means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**TRANSPORTATION EXPENSES**

A. In addition we will pay, without application of a deductible, either of the following, whichever is greater:

1. Up to $25 per day, to a maximum of $750; or

2. The limit for Loss of Use, if any, shown in the Declarations.

**B.** For:

   **1.** Temporary transportation expenses incurred by you in the event of the total theft of **your covered auto**. We will pay for such expenses only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

   **2.** Indirect loss expenses for which you become legally responsible in the event of a loss to a **non-owned auto**. We will pay for indirect loss expenses if the loss is caused by:

      **a.** a **comprehensive** loss only if the Declarations indicate that Comprehensive Coverage is provided for any **your covered auto**.

      **b.** **collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto**.

**C.** If the loss is caused by a total theft of **your covered auto** or a **non-owned auto**, we will pay only expenses incurred during the period:

   **1.** Beginning 48 hours after the theft; and

   **2.** Ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

**D.** If the loss is caused by other than a total theft of a **non-owned auto**, we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

**E.** Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto**.

**EXCLUSIONS**

We will not pay for:

   **1.** Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

   **2.** Loss to **your covered auto** or any **non-owned auto** while employed in the delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

   **3.** Damage or loss due and confined to:

      **a.** wear and tear;

      **b.** freezing;

      **c.** mechanical or electrical breakdown or failure; or

      **d.** road damage to tires.

      This exclusion (3.) does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto**.

   **4.** Damage or loss arising out of neglect. Neglect means your failure to adequately maintain **your covered auto** or **non-owned auto** after the loss.

      With respect to water under Comprehensive Coverage, there is no coverage for:

      **a.** moisture, condensation, humidity, or vapor;

      **b.** water intrusion around or through panels, surfaces and seals; or

      **c.** water that collects in spaces or ventilation systems; or

      **d.** fungi, dry rot or bacteria;

      resulting from neglect.

   **5.** Loss due to or as a consequence of:

      **a.** discharge of any nuclear weapon (even if accidental);

      **b.** war (declared or undeclared);

      **c.** civil war;

      **d.** insurrection; or

      **e.** rebellion or revolution.

   **6.** Loss from or as a consequence of the following, whether controlled or uncontrolled or however caused:

      **a.** nuclear reaction;

      **b.** radiation; or

      **c.** radioactive contamination.

   **7.** Loss to:

      **a.** any electronic equipment designed for the production or reproduction of sound, pictures, audio, visual or data or that receives or transmits sound, pictures or data signals.

      **b.** This exclusion (7.) does not apply to:

         **(1)** equipment designed for the reproduction of sound or transmission of sound, pictures, audio, visual or data signals and accessories used with such equipment, provided:

            **(a)** the electronic equipment is permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto**; or

(b) the electronic equipment is:

    i.   removable from a housing unit which is permanently installed by the original vehicle manufacturer or manufacturer's dealership in the auto;

    ii.  designed to be solely operated by use of the power from the auto's electrical system; and

    iii. in or upon **your covered auto** or any **non-owned auto**;

at the time of loss. However, we will pay only up to $1,000 or the actual cash value of **your covered auto** or any **non-owned auto**, whichever is less, for such equipment that is not installed by the original vehicle manufacturer or manufacturer's dealership.

(2) any other electronic equipment that is:

    (a) necessary for the normal operation of the auto or the monitoring of the auto's operating systems;

    (b) an integral part of the same unit housing any electronic equipment described in 7.a. and permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto.**

8.  Loss to:

    a.  tapes, records, discs, or other media used with such equipment described in exclusion (7.); or

    b.  any other accessories, not permanently installed used with such equipment described in exclusion (7.).

9.  Loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities because you or any **family member:**

    a.  engaged in illegal activities; or

    b.  failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (9.) does not apply to the interests of Loss Payees in **your covered auto.**

10. Loss to a **camper body,** motorhome or **trailer** you own which is not shown in the Declarations. This exclusion (10.) does not apply to a **camper body,** motorhome or **trailer** you:

    a.  acquire during the policy period; and

    b.  ask us to insure within 30 days after you become the owner.

11. Loss to any **non-owned auto** when used by you or any **family member** without the express or implied permission of the owner.

12. Loss to equipment, whether operational or not, whose design may be used for the detection or location of law enforcement equipment.

13. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the **business** of:

    a.  selling;

    b.  repairing;

    c.  servicing;

    d.  storing; or

    e.  parking;

vehicles designed for use on public highways. This includes road testing and delivery.

14. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion 2. and 13. This exclusion (14.) does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer.**

15. Loss to **your covered auto** or any **non-owned auto** while it is:

    a.  operating on a surface designed or used for racing. This does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event;

    b.  participating in a high performance driving or racing instruction course or school; or

    c.  preparing for, practicing for, used in, or competing in any prearranged or organized:

        (1) race activity; or

(2) speed, performance, stunt, or demolition contest or exhibition.

16. Loss to, or loss of use of, a **non-owned auto** rented by:

    a. you; or

    b. **any family member;**

If a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member,** pursuant to the provisions of any applicable rental agreement or state law.

17. Loss to **your covered auto** or any **non-owned auto,** arising out of the actual, alleged or threatened presence, growth, proliferation or spread of fungi, dry rot or bacteria.

18. Loss to **your covered auto, non-owned auto, or trailer,** for **diminution in value.**

19. Loss in excess of $1,000 per claim or the actual cash value of **your covered auto** or any **non-owned auto,** whichever is less, for any furnishings or equipment that were not installed by the original vehicle manufacturer or manufacturer's dealership which mechanically or structurally changes your vehicle and results in increase in performance or change in appearance, including but not limited to:

    a. custom murals, paintings or other decals or graphics;

    b. custom wheels, tachometers, pressure and temperature gauges;

    c. modified or custom engines and fuel systems, light bars, racing slicks and/or oversized tires, roll bars and lift kits, winches, utility boxes, and tool boxes; or

    d. non-standard paint.

This exclusion does not apply to equipment installed to make a vehicle handicap accessible.

20. Loss arising out of the use of **your covered auto** while leased or rented to others.

**LIMIT OF LIABILITY**

A. At our option, our limit of liability for loss will be the lowest of:

1. The actual cash value of the stolen or damaged property;

2. a. The amount necessary to repair or replace the property with property of like kind and quality;

    b. Determination of the cost of repair or replacement will be based upon one of the following:

(1) the cost of repair or replacement agreed upon by you and us;

(2) a competitive bid approved by us; or

(3) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

3. The limit of liability shown in the Declarations.

However, the most we will pay for loss to any **non-owned auto,** which is a trailer, is $1,500.

B. An adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property or damaged part of the property at the time of the loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and paint condition. When replacing parts normally subject to repair or replacement during the useful life of the vehicle, we will not pay for the amount of any betterment.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and **property damage** covered under Part C of this policy.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

If you and we both agree, we will waive the applicable deductible shown in the Declarations for a loss to glass if the glass is repaired rather than replaced.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **non-owned auto;**

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## MEXICO COVERAGE — LIMITED ENDORSEMENT

### WARNING

### READ THIS ENDORSEMENT CAREFULLY!

Auto accidents in Mexico are subject to the laws of Mexico only — NOT the laws of the United States of the America. Unlike the United States, the Republic of Mexico considers an auto accident a CRIMINAL OFFENSE as well as a civil matter.

In some cases, the coverage under this endorsement may NOT be recognized by Mexican authorities and the company may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving into Mexico.

This endorsement does not apply to trips into Mexico that exceed 25 miles from the boundary of the United States of America.

The coverages for **your covered auto** provided by this policy are extended to accidents occurring in Mexico within 25 miles of the United States border. The extension only applies for **infrequent trips** into Mexico that do not exceed ten days at any one time.

"Infrequent trips" means less than five (5) trips in any calendar month.

### Additional Exclusion

We do not provide any coverage:

1. If **your covered auto** is not principally garaged and used in the United States; and

2. To any **insured** who does not live in the United States.

### Special Conditions

1. **Other Insurance.** The insurance we provide by the endorsement will be excess over any other collectible insurance.

2. **Losses Payable Under Coverage for Damage to Your Auto.** We will pay losses under Coverage for Damage to Your Auto in the United States, not in Mexico. If **your covered auto** must be repaired in Mexico in order to be driven, we will not pay more than the actual cash value of such loss at the nearest United States point where the repairs can be made.

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical examinations by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same. We may examine any **insured** separately and apart

from the presence of any other **insured.**

4. Authorize us to obtain:

    a. medical reports; and

    b. other pertinent records.

5. Submit a proof of loss, under oath if required by us.

For Personal Injury Protection Coverage, if proof of loss is required, you must submit it to us no later than six months after the date of the accident.

C. A person seeking Uninsured Motorists Coverage must also:

1. Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any non-owned auto and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART F — GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy period is the period stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

C. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

### BANKRUPTCY

Bankruptcy or insolvency of the insured shall not relieve us of any obligations under this policy.

### CHANGES

A. Before the end of any policy period, we may offer to change the coverage provided in this policy. Your payment of the premium billed by us for the next policy period will be your acceptance of our offer.

B. This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

C. The premium for each vehicle is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we may adjust your premium or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles.

2. Operators using insured vehicles including newly licensed **family member** drivers. Any household members that have licenses must be disclosed to us.

3. The location where your vehicle is principally garaged.

4. The persons who regularly drive insured vehicles, including newly licensed **family members.**

5. Customized equipment or parts.

D. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we

Implement the change in your state. This paragraph (D.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

E. Additional or return premium of $3.00 or less resulting from policy changes will be waived.

## PAYMENT OF PREMIUM

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

## FRAUD

This policy was issued in reliance upon the information provided on your application. We may void coverage under this policy if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the **insured** has a legal obligation to pay damages; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the legal liability of an **insured**.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another person, entity or organization we shall be subrogated to that right. That person shall:

1. Do whatever is necessary to enable us to exercise our rights; and

2. Do nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using **your covered auto** with your express or implied permission or other person having lawful possession and is not using a vehicle beyond the scope of the permission granted.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

C. 1. Our rights do not apply under paragraph **A.** with respect to coverage under Paragraph 2. of the definition of **uninsured motor vehicle** if:



a. we have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **uninsured motor vehicle**; and

b. we fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

2. If we fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:

a. That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Uninsured Motorists Coverage; and

b. We also have a right to recover the advanced payment.

D. This provision does not apply to Personal Injury Protection Coverage.

## TERMINATION

A. **Cancellation.** This policy may be canceled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

1842

b. giving us advance written or verbal notice of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. at least 10 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. at least 20 days notice in all other cases.

3. We will not cancel this policy solely because you are an elected official.

4. After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

   a. for nonpayment of premium; or

   b. for fraud or material misrepresentation concerning the policy or insureds; or

   c. if your driver's license or that of:

      (1) any driver who lives with you; or

      (2) any driver who customarily uses your covered auto;

      has been suspended or revoked. This must have occurred:

      (1) During the policy period; or

      (2) Since the last anniversary of the original effective date if the policy period is other than 1 year.

      However, in the event you or a driver described in 4.c. above has had his or her driver's license suspended or revoked, before cancelling this policy we will offer to continue the policy with a provision excluding coverage when the person who has had his or her driver's license suspended or revoked is operating your covered auto. If such offer is accepted by you, we will issue an endorsement to that effect; or

   d. If the Texas Department of Insurance determines that continuation of the policy would result in a violation of the Texas Insurance Code or any other law governing the business of insurance in Texas.

B. Nonrenewal. If we decide not to renew this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. We will have the right not to renew or continue it only at each 1 year anniversary of its original effective date.

However, we will not refuse to renew or continue this policy solely because:

1. Of the age of you or any family member; or

2. You are an elected official.

C. Automatic Termination. If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. Other Termination Provisions.

1. If the law in effect in your state at the time this policy is issued or renewed:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed pro rata. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse, civil partner or domestic partner if resident in the same household at the time of death. Coverage applies to the spouse, civil partner or domestic partner as if a named insured shown in the Declarations; and

1842X

**2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

**B.** Coverage will only be provided until the end of the policy period.

### TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any **insured.**

### LOSS PAYABLE CLAUSE

As to the interest of the loss payee, this policy will remain in effect from the inception date and until ten days after proof of mailing that the cancellation notice has been mailed to the loss payee. When we pay the loss payee we shall, to the extent of payment, have the loss payee's rights of recovery.

Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of any **insured,** or where the loss is otherwise not covered under the terms of the policy, the loss payee or lienholder's interest will not be protected.

### STORAGE COSTS

If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

### NAMED DRIVER EXCLUSION

If there is an excluded driver under this policy, then we will not provide coverage for any claim arising from an accident or loss involving a motor vehicle being operated by that excluded person. This includes any claim for damages made against you or any **family member** or any other person or organization that is vicariously liable for an accident arising out of the operation of a motor vehicle by the excluded driver.

### PAYMENT OF FIRST PARTY BENEFITS

**A.** Within 15 days after we receive your written notice of claim, we must:

**1.** Acknowledge receipt of the claim.

If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment.

**2.** Begin any investigation of the claim.

**3.** Specify the information you must provide in accordance with paragraph A. above.

We may request more information, if during the investigation of the claim such additional information is necessary.

**B.** After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

**1.** Within 15 **business days;** or

**2.** Within 30 days if we have reason to believe the loss resulted from arson.

**C.** If we do not approve payment of your claim or require more time for processing your claim, we must:

**1.** Give the reasons for denying your claim; or

**2.** Give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after our requesting more time.

**D.** In the event of a weather-related catastrophe or major natural disaster, as defined by the Texas Department of Insurance, the claim-handling deadlines as stated above are extended for an additional 15 days.

### LOSS PAYMENT

**A.** If we notify you that we will pay your claim, or part of your claim, we must pay within 5 **business days** after we notify you.

**B.** If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 **business days** after the date you perform the act.

### NOTICE OF SETTLEMENT OF LIABILITY CLAIM

**A.** We will notify you in writing of any initial offer to compromise or settle a claim against you under the liability section of this policy. We will give you notice within 10 days after the date the offer is made.

**B.** We will notify you in writing of any settlement of a claim against you under the liability section of this policy. We will give you notice within 30 days after the date of the settlement.

## ADDITIONAL COVERAGES

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING ADDITIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

### TOWING AND LABOR COSTS COVERAGE

A.  We will pay reasonable expenses incurred each time **your covered auto** or a non-owned auto is disabled, for:

   1.  Towing to the nearest place where necessary repairs can be made during regular **business** hours;

   2.  Towing to dislodge the vehicle from its place of disablement if on or next to a public street or highway;

   3.  Mechanical labor up to one hour at the place of its breakdown, including change of tire;

   4.  Delivery of gasoline, oil or loaned battery. We do not pay the cost of these items.

B.  We will pay for key lock-out services and labor costs incurred at the location of **your covered auto or non-owned auto,** but not exceeding $50 for services provided.

No deductible applies to this coverage.

### LOSS OF USE COVERAGE

The provisions and exclusions that apply to Part D —Coverage for Damage to Your Auto also apply to this coverage except as changed below:

When there is a loss to any vehicle described in the Declarations for which a specific premium charge indicates that Loss of Use Coverage is afforded, we will reimburse you for expenses you incur to rent a substitute vehicle.

This coverage applies only if:

   1.  The vehicle is withdrawn from use for more than 24 hours; and

   2.  The loss is caused by **collision,** or is covered by the Comprehensive Coverage of this policy;

However, this coverage does not apply to losses caused by **collision** if Collision Coverage does not apply to the vehicle.

Our payment will be limited to that period of time reasonably required to repair or replace the vehicle. We will pay up to the amount per day and the maximum shown for Loss of Use in the Declarations.

No deductible applies to this coverage.

### SUPPLEMENTARY DEATH BENEFIT ENDORSEMENT

Coverage under this endorsement is provided and payable only when other benefits are paid or payable under: Personal Injury Protection Coverage, Medical Payments Coverage and/or Auto Death Indemnity as afforded by this policy. The coverage is subject to the provisions of Personal Injury Protection Coverage, Medical Payments Coverage and/or Auto Death Indemnity except as limited by this endorsement.

It is agreed that Medical Payments Coverage, Personal Injury Protection Coverage and/or Auto Death Indemnity are extended to add the following:

#### Insuring Agreement And Limit Of Liability

We will pay a supplementary death benefit equal to the limit shown for the applicable coverages but not more than $10,000 per person because of death:

   1.  Caused by an auto accident; and

   2.  Sustained by an **insured** while wearing a **seat belt** or protected by an air bag.

We will pay benefits only if an auto accident was the proximate cause of death occurring within three years of the date of such accident. However, under Auto Death Indemnity, death must occur within one year of the date of such accident.

#### Proof Of Claim

We will pay benefits under this endorsement if the beneficiary gives us proof of death of the **insured** along with a police report or other proof, that the **insured** at the time of the auto accident, was wearing a **seat belt** or protected by an air bag.

#### Other Coverage Provided By This Policy

Any amounts payable under this endorsement shall not be reduced by any other amounts paid or payable under this policy.

#### Definitions

**"Insured"** as used in this endorsement means the same as **"insured"** as defined in the applicable Medical Payments Coverage and/or Personal Injury Protection Coverage. It also means the person or persons designated in Auto Death Indemnity if afforded.

**"Seat Belt"** means manual or automatic safety belts or seat and shoulder restraints or a child restraint device.

"Air bag" is a functioning air bag designed to protect the occupant of a seat in an auto.

"Beneficiary" means (in order of priority of payment):

1. The surviving spouse if a resident in the same household as the deceased at the time of the accident, or

2. If the deceased is an unmarried minor, either of the surviving parents who had legal custody at the time of the accident, or

3. The estate of the deceased.




